USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _____9/30/22_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**CHELSEA HOTEL OWNER LLC ET AL.**

**Plaintiffs,**

-against-

**CITY OF NEW YORK ET AL.,**

**Defendants.**

---

21-CV-3982 (ALC)(RWL)

<u>OPINION & ORDER</u>

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Chelsea Hotel Owner LLC ("Owner"), Ira Drukier, Richard Born, and Sean MacPherson bring this action against Defendants City of New York ("City"), the New York City Department of Housing Preservation & Development ("HPD"), Martha Ann Weithman in her official capacity as Assistant Commissioner of HPD, and the New York City Department of Buildings ("DOB"), asserting claims pursuant to 42 U.S.C. § 1983 for the violation of Plaintiffs' substantive due process rights. Defendants now move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies Defendants' motion in part and grants Defendants' motion in part.

## BACKGROUND

This recitation of facts is based on Plaintiffs' complaint. *See* ECF No 1.

Plaintiff Chelsea Hotel Owner LLC is a limited liability company managed by Ira Drukier, Richard Born, and Sean MacPherson, who are experienced developers and hotel managers. Compl. ¶¶ 6, 25. The Owner has owned the historic Hotel Chelsea since November 2016. *Id*. ¶¶ 6, 79. The hotel has two single room occupancy units ("SROs"). *Id*. ¶ 48. If a building meets the definition

1

of a single room occupancy multiple dwelling ("SROMD"), before receiving an "Alt-1" permit from DOB to move kitchens or bathrooms, the building owners must apply to HPD for a Certificate of No Harassment ("CONH"). *Id*. ¶¶ 51–52. HPD will only issue a CONH after certifying that the building owner has not engaged in any tenant harassment. *Id*. ¶ 52. A building designated as an SROMD can also apply to HPD for an exemption from the CONH process. *Id*. ¶ 53. For example, buildings that otherwise meet the criteria for an SROMD but are designated as "luxury hotels" are not considered SROMDs and are eligible for an exemption. *Id*. ¶¶ 55. On June 6, 1997, the hotel received a luxury hotel exemption. *Id*. ¶ 57. The hotel was then classified in DOB's system as "SRO Restricted: No," which indicates that a building is a SROMD. *Id*. ¶¶ 60, 63.

For several years, the hotel underwent renovations pursuant to a permit validly obtained in November 2012, and the Owner continued the renovations pursuant to the permit after it purchased the hotel. *Id*. ¶¶ 44, 79–82. Between 2012 through 2018, the permit was renewed by DOB annually and audited by DOB at least three times. *Id*. ¶ 72.

In 2018, an SRO tenant of the hotel sent an email to HPD inquiring why a CONH was not required when the owners were demolishing her hallway bathroom. *Id*. ¶ 96. In response, HPD initiated a change of the hotel's status in the DOB system to "SRO Restricted: Yes." *Id*. ¶ 109. Subsequently, DOB issued to the hotel a notice of intent to revoke the permit due to the lack of CONH, and then ultimately issued a stop work order. *Id*. ¶¶ 110, 113. Plaintiffs allege that HPD "believed [the process of redesignating the hotel] would send a strong pro-tenant message to landlords throughout the City." *Id*. ¶ 16.

After unsuccessfully attempting to resolve the issue with DOB by explaining that the building was not a SROMD, the Owner ultimately applied for a CONH on February 13, 2019. *Id*.

¶¶ 115–16. The application stated that "we strongly believe that were the historic rental records available, the Hotel Chelsea would qualify for a luxury exemption," but the Owner was unable to locate the records. *Id*. ¶ 116. Applying for the CONH prompted an HPD investigation, which began on April 22, 2019, into allegations of tenant harassment. Compl. ¶ 117. On August 9, 2019, HPD issued a determination that there was reasonable cause to believe that tenants were harassed. *Id*. ¶ 128.

On September 27, 2019, HPD filed a petition seeking a hearing before the administrative adjudicator, the Office of Administrative Trials and Hearings ("OATH"), regarding the finding of harassment. *Id*. The trial lasted for 13 days and was held between March 6, 2020 and November 4, 2020. *Id*. ¶ 131. The Complaint alleges that in the OATH proceeding, HPD intentionally withheld and sought to prevent the production of emails that would explain how the status of the building was changed. *Id*. ¶¶ 20, 98. The judge utimately allowed the Owner to "explore the question of whether HPD was required to prove that the Hotel was an SROMD under the law applicable in 2012 in order to prevail." *Id*. ¶ 132. In the course of gathering materials to address this matter, the Owner discovered the luxury exemption in DOB files. *Id*. ¶ 133. On January 5, 2021, HPD voluntarily withdrew the action. *Id*. ¶ 135. On October 7, DOB rescinded the stop work order. *Id*. ¶ 135.

## STANDARD OF REVIEW

Rule 12(b)(6) allows the court to dismiss a claim if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss, the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184,

191 (2d Cir. 2007). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims should be dismissed when a plaintiff has not pled enough facts that "plausibly give rise to an entitlement to relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Accordingly, where a plaintiff alleges facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 557 (2007)).

## DISCUSSION

### I.    Substantive Due Process

Plaintiffs bring three causes of actions, each alleging violations of their substantive due process rights. Specifically, they allege violations stemming from: the redesignation of the hotel as "SRO: Restricted" (Count I); the stop work order and reversal of the building permit (Count II), and the initiation of the OATH proceeding (Count III).

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2011) (internal quotation marks and citations omitted). Establishing a substantive due process claim is a two-step process. First, the plaintiff must allege that the plaintiff "was deprived of a fundamental constitutional right." *Walker v. City of Waterbury*, 361 Fed. App'x 163, 165 (2d Cir. 2010) (citing *Local 342 v. Town Bd. of*

4

*Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994)). Second, the plaintiff must establish that the government's behavior "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998). In other words, the violation "must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.'" *Natale v. Town of Ridgefield,* 170 F.3d 258, 262 (2d Cir.1999).

At the first step, Defendants allege that Plaintiffs have not alleged a fundamental right, but rather an economic right, and with respect to the third cause of action, a malicious prosecution tort. The Court disagrees.

When "a landowner claims that it was deprived of a property right in violation of the substantive due process doctrine, we must begin our analysis by determining whether a constitutionally cognizable property interest is at stake." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 130 (2d Cir. 1998) (internal quotation marks and citation omitted). Courts in this circuit recognize that individuals have a constitutionally cognizable property interest in property they own. *See, e.g.*, *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995) ("A property interest can sometimes exist in what is sought—in addition to the property interest that exists in what is owned. . . ."); *Joglo Realties, Inc. v. Seggos*, No. 16-CV-1666, 2016 WL 4491409, at *5 (E.D.N.Y. Aug. 24, 2016) ("Here, it is undisputed that plaintiffs have a valid property interest as both sides acknowledge that plaintiffs 'own' the Esplanade."). Further, "a party may have a constitutionally protectible "property interest" in a benefit that affects land use—*i.e.* a building permit." *Zahra*, 48 F.3d at 681; *see also Vecce v. Town of Babylon*, 32 A.D.3d 1038, 1040, 822 N.Y.S.2d 94 (2d Dep't 2006) ("[T]he petitioner had a protectible property interest in the building

5

permit."). Here, Plaintiffs allege that they had property interests in the hotel and in the 2012 building permit.

Courts have held that in order to turn a property interest into a fundamental right in New York, the right must have vested, meaning that "a property owner must have undertaken substantial construction and must have made substantial expenditures." *DLC Mgmt.*, 163 F.3d at 130; *see also Cine SK8 Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007) ("In New York, a vested right can be acquired when, pursuant to a legally issued permit, the landowner demonstrates a commitment to the purpose for which the permit was granted by effecting substantial changes and incurring substantial expenses to further the development." (internal quotation marks and citations omitted)). Further, "the municipal action results in serious loss rendering the improvements essentially valueless." *Cine SK8,* 507 F.3d at 784 (internal quotation marks and citations omitted).

Other courts in the Circuit have instead applied the rule that a property right only becomes a fundamental right "if the plaintiff can show a 'clear entitlement' to the relief sought." *Vertical Broad., Inc. v. Town of Southampton,* 84 F. Supp. 2d 379, 391 (E.D.N.Y. 2000) (citations omitted). A "legitimate claim of entitlement" exists where "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Walz v. Town of Smithtown,* 46 F.3d 162, 168 (2d Cir. 1995). This inquiry "turns on whether the issuing authority lacks discretion to deny the permit, *i.e.*, is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 504 (2d Cir.2001) (quoting *Natale,* 170 F.3d at 263).

The Court finds that Plaintiffs have satisfied both tests at this stage. Under the first test, Plaintiffs have alleged facts demonstrating that they undertook substantial renovations and made

6

substantial expenditures. For example, they allege that they invested more than $200 million in the development between 2016 and 2018. Compl. ¶ 82. They built a new elevator, a new stairwell, a temporary lobby; they added risers throughout the building; and they demolished aging rooms, renovated occupied rooms, and created new rooms, among other things. *Id*. ¶¶ 80–82.

Unlike Defendants contend, the municipal action need not "destroy the totality of Plaintiffs' property interest." ECF No. 32 at 4. Rather, it must render the improvements essentially valueless. Discovery can shed light on whether the improvements were made essentially valueless by Defendants' action. Construing the facts in a light most favorable to the Plaintiffs, the Complaint has alleged a fundamental right at this stage.

The Court also concludes that Plaintiffs have met the second test. Plaintiffs have alleged that the hotel was being renovated pursuant to a valid permit, that the permit was renewed annually between 2012 and 2018, that the permit was audited by DOB multiple times, that the hotel was validly classified as a luxury hotel, that such a classification exempted the hotel from SROMD status, and that the stop work order was lifted and the permit was reinstated once the DOB and HPD confirmed the existence of the luxury hotel status. Such allegations are sufficient to infer that there is a strong likelihood that absent the alleged violation of due process, the permit would have been renewed and the renovation would have continued on Plaintiff's property in 2018.

Thus, drawing all reasonable inferences in favor of the non-moving party, the Court concludes that Plaintiffs have alleged a fundamental right.[1]

---

[1] Defendants argue that the third cause of action "sounds in the tort of malicious prosecution," which cannot be brought under a substantive due process claim. ECF No. 31 at 12–13. While the Court agrees that substantive due process does not encompass a malicious prosecution claim, the Court declines to hold that Plaintiffs' third cause of action—which is presented in the Complaint as a substantive due process claim---is actually a claim of malicious prosecution. *See*

Additionally, at this motion to dismiss stage, Plaintiffs have also adequately alleged facts to satisfy the second step—demonstrating that the government's actions infringed upon their property rights in an irrational and arbitrary manner. *See Natale*, 170 F. 3d at 262. Courts have found due process violations where government action was "tainted with fundamental procedural irregularity." *Cine SK8*, 507 F.3d at 789. Courts will also uphold due process challenges when plaintiffs can "prove that they were denied a permit and use of their property not because of a good faith mistake on the part of the [government entity] about the applicable law, but because of indefensible reasons such as impermissible political animus." *Brady v. Town of Colchester*, 863 F.2d 205, 216 (2d Cir. 1988).

Here, Plaintiffs have alleged that the DOB's official system correctly portrayed the hotel's status as a building that was not classified as an SROMD and the hotel was treated as such for several years by DOB and HPD after careful review as reflected in various audits, consent decrees, and permit renewals. In 2018, HPD quickly re-designated the hotel as an SROMD building without adequate investigation, and DOB followed suit. DOB then refused to engage with Plaintiffs to substantively respond to their inquiries as to why the hotel's status had changed. In the administrative proceeding, HPD sought to conceal its wrongdoing by refusing to produce emails regarding the change in status. Further, the complaint alleges that HPD's actions were induced by political and bad-faith motives on the part of HPD.

---

*Joglo*, 2016 WL 4491409, at *5 (asserting that the plaintiffs could state a substantive due process claim on the basis of an administrative proceeding regarding land use if the plaintiffs "allege facts that give rise to the inference that the initiation of the proceeding was so meritless that it 'shocks the conscience'").

The Court acknowledges that the "shock the conscience" standard is a rigorous one, and discovery and further litigation may very well show that Plaintiffs cannot meet it. At this point, however, plaintiffs have met their burden.

## II.    *Monell* Liability

A municipality may not be held liable under Section 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). To prevail on a *Monell* claim against a municipality under Section 1983 based on the acts of a public official, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). A plaintiff may satisfy the requirement to plead the "policy or custom" requirement by alleging: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)(internal citations omitted).

Here, Defendants contend that there is no *Monell* liability because there is no constitutional violation. As the Court has found that a constitutional violation has been adequately alleged, the Court rejects this argument. Further, Plaintiffs have sufficiently demonstrated that the alleged

9

violations were conducted pursuant to a policy or custom as the complaint alleges that the relevant actions were carried out by a final policymaker, HPD Assistant Commissioner Martha Weithman who is listed by the City as an employee with policy making discretion. Compl. ¶ 64 n.8.

Accordingly, Plaintiffs adequately allege municipal liability.

**III.    Proper Parties**

HPD and DOB are non-suable entities and not proper parties for this action. *See* N.Y.C. Admin. Code & Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law."); *Nnebe v. Daus,* 644 F.3d 147, 158 n.6 (2d Cir. 2011) (noting that "as a general matter, agencies of New York City are not suable entities in § 1983 actions"). Martha Ann Weithman is not a proper party because "[w]here the governmental entity can itself be held liable for damages as a result of its official policy, a suit naming the legislators in their official capacity is redundant." *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 699 (S.D.N.Y. 2011) (internal quotation marks and citations omitted). Therefore, "courts in the Second Circuit routinely dismiss official capacity claims against municipal officials as duplicative of the claims against the municipality." *In re New York City Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 409 (S.D.N.Y. 2021). The claims against Defendant Weithman are duplicative of the claims against the City. Accordingly, HPD, DOB, and Defendant Weithman are dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The motion is granted in as much as the Court grants the motion to dismiss Defendants the

New York City Department of Housing Preservation & Development ("HPD"), Martha Ann Weithman in her official capacity as Assistant Commissioner of HPD, and the New York City Department of Buildings. In all other respects, the motion to dismiss is denied. The parties shall submit a status report to the Court within two weeks of this Order.

The Clerk of Court is respectfully requested to terminate the motion at ECF No. 29 and to terminate Defendants the New York City Department of Housing Preservation & Development Martha Ann Weithman, and the New York City Department of Buildings.

**SO ORDERED.**

**Dated: September 30, 2022**
          **New York, New York**

_____
                    **ANDREW L. CARTER, JR.**
                    **United States District Judge**